Good morning, Your Honors. May it please the Court, Roger Cohen appearing on behalf of Dr. Murray in place of Scott Blaney, who was appointed to the Maricopa County Superior Court following the briefing in this manner. I'd like to reserve two minutes for rebuttal. Please watch the clock. Your Honors, this is a case about a medical doctor, Dr. Murray, who is both a doctor and a soldier, who put his own mental and physical safety at risk for our country. He is exactly the person who should be protected, for whom the ADA and USERA were enacted to protect, and yet somehow they didn't protect him. He comes back from his active duty, and he is terminated from his employment for reasons that are related both to his service and to the resulting disability. And how is the February, I guess it was a February incident where he allegedly, and I guess he conceded, yelled at and pushed Dr. Chan, how is that related to his military service? The incident is not, but that's the point, Your Honor. If we're talking about the USERA claim, the issue is what was the motivating factor? Were the persons who made the decision to terminate Dr. Murray motivated by anti-military bias? Judge Logan says, no, they weren't. But he was weighing the evidence. And if you read the order on the summary judgment, it's replete with conclusory statements, observations, judgment calls on the sufficiency of the evidence. Not even the sufficiency of the evidence, but weighing the evidence, pro and con. I went through and highlighted a few passages. So is the evidence of the AOMCA, I guess, is the evidence that his military service was a motivating factor limited to the e-mails? Is that the e-mails prior to his return from military service? I don't believe so, Your Honor. I think that the e-mails. Okay, so what is it? What is the evidence other than the e-mails? Because the e-mails just say it's a problem that he's gone, we don't have enough staffing, how can we get help in there? But then I didn't see any e-mails like that after he returned in November. Well, they didn't, not specifically. But you've got a three-month period. So you've got this period of well over a year, two years, where there are continual communications, expressing frustrations with Dr. Murray because of his military service. Well, because of his absence. I mean, that's how I read the e-mails, that he wasn't there. I mean, that obviously was a problem for the hospital. Well, but he wasn't there. There's a suggestion, and I don't know how well this was fleshed out in the record, but there's a suggestion that he had volunteered for military service. It's not that he wasn't there. If he had just decided to take off, they wouldn't have had to hold a job for him. The frustration was he's off being a soldier, and we have to save a position. So there's frustration. So that's number one. Thank you. How does it affect your position that a prior employee, a nurse, who also would have been in the operating room under circumstances, but in any case was fired for similar actions, for also displaying what can be described as anger or otherwise inappropriate behavior at the hospital? Well, for one thing, that leads directly to the ADA claim, because the anger management, and this is also the time. Well, it does, but if we're talking about you, Sarah, unless you would like to abandon that, but if we're talking about you, Sarah, when you say it's his military record that was a motivating factor, I think the hospital, the defense believes it's proven it would have taken the same action regardless of that service. And I'm asking, what about this past employee that was also terminated for similar circumstances? The problem with that, Your Honor, is that there was no trial. The district judge found that the facts of the incident were hotly contested. And he goes on to go through and analyzing the facts in a way that clearly shows a weighing of evidence. So that's what the court said, that this would have happened in any event. But those are inferences, and the problem is this is a summary judgment case, and the facts are to be construed in the light most favorable to the non-moving party, which when you read the order, it's very clear that is not what the district court did. And inferences have to be drawn in favor of the non-moving party, all reasonable inferences. So after he – yes, we're familiar with the standard. After he returns in November, what's the evidence regarding military service being a motivating factor? Well, the most important, Your Honor, is Dr. Cron's statement, we can't have someone working here who has anger management problems. And that is a direct comment on his PTSD symptoms, which are a consequence of the military service, and there is evidence in the record to show that she knew that. The defendants denied. Defendants, no, no, no. She didn't learn about the PTSD from his FMLA paperwork. Does USERA protect PTSD? That was a question I had. Like, the language of USERA talks about military service and that steps can't be taken due to service. PTSD may be a symptom caused by his service, but isn't directly implicated in the language of USERA. So help me understand why the PTSD, which I think he disclaimed that he didn't have PTSD or he wasn't making that claim in this lawsuit. But help me understand how USERA and PTSD go together. There's a logical nexus, Your Honor. So this says on the basis of that membership, application for membership, performance of service, application for service or obligation. So how do I read this as applying to what he, the perception, I guess, of PTSD? Someone goes off to serve in the military, comes back with a condition that is a direct result of his military service. There is a nexus, a logical nexus between the PTSD and the military service, which we believe brings him within the ambit of the statute. Is there any case that supports that? I don't have a specific citation, Your Honor. Okay, thank you. Counsel, could I interject a question, please? Yes, Your Honor. On the point you just made, let me give you a hypothetical. This relates to whether the PTSD could possibly make him unfit for the job he's got as an anesthesiologist. So to take a simpler hypothetical but a tragic one, let's say someone goes in military service and they're a piano player. They play piano at a tavern or a nightclub regularly. They've been doing that for years. They go to military service and a bomb goes off and they are injured in a way so they can no longer use their hands to play piano. And then they get fired from that job. Is that a USARA violation? I think it is, Your Honor. I don't think that the person can be necessarily expected to perform the same duties. If the piano player is physically unable to play piano, it would be ridiculous to say you must play piano. But he could be given a job teaching. He could be given a job conducting. He could be given other duties because USARA protects against termination. It wouldn't be cause for termination. Certainly under the second branch of USARA, the termination within one year, I think that's absolutely a violation. Okay.  I do want to talk about the ADA standards, Your Honor. The issue on the standard of proof for status-based claims under the Americans with Disability Act is and should be a motivating factor. Now, the argument is that because of the Nassar case and the Gross case, that that has been overruled implicitly. And both the Ninth Circuit decisions since the relevant Supreme Court decisions and a textual analysis of the Americans with Disability Act contradict that conclusion. So every circuit disagrees with that. Every circuit that has looked at that issue disagrees with that position. Your Honor, that may or may not be true. But maybe the Ninth Circuit is more wise. Maybe we do a better job in this part of the world. But the prior rule before Nassar, the rule in the Ninth Circuit was that in all ADA cases, the motivating factor was the standard causation. That's the Head v. Glacier case. In Nassar, the court decides that because of the difference in the text, retaliation claims are treated differently than status-based claims. And retaliation wasn't covered by, what is it, 2000E2M? And neither is disability, right? So then Nassar says Congress intended 2000E-2M's motivating factor standard to apply only to actions based on race, color, religion, sex, and national origin. Therefore, Nassar concluded it doesn't apply to retaliation claims. But it also doesn't include disability, so it's hard to say why the motivating factor standard would apply to disability claims. I mean, that's the reasoning of the circuit courts that have gone the other way. Well, how do you respond to that? Because there's a difference in the wording. So there are two sections that we're dealing with under the ADA. The retaliation section, Section 12203, forbids discrimination because of disability. And that because is the word that is concentrated on in Nassar. The court says because means logical but for. And there's a significant amount of discussion in the majority opinion. And, of course, Judge Ginsburg in dissent points out, well, you're creating this distinction where status-based claims and retaliation claims are going to be treated differently. And the majority says that's what we intend. Under 12112 of the ADA, status-based discrimination is forbidden on the basis of. So if because ‑‑ I'm sorry, Your Honor. So I noticed that wording difference, so I was wondering how that cut. But then on Gentry, I think that's a Fourth Circuit case, notes that Nassar itself says based on means but for standard, inciting, let's see, Safeco Insurance Company, it says because of means based on, and that based on indicates a but for causal relationship. So it was ‑‑ it seemed to me that the difference between on the basis of and based on didn't seem so significant that Gentry was erroneous. So are you saying that Gentry is wrong? If that's the logical conclusion. The point, Your Honor, is this. Congress could have used the same word. If it meant that the standards was to be the same under section 12112 and 12203, it could have used the same word. But it didn't. So the general rule under 112, no covered entity shall discriminate against a qualified individual on the basis of disability. So I'm asking you why Gentry is wrong in saying that on the basis of means the same as because of based on language in Nassar. It seems to me, Your Honor, that Nassar, the discussion of because and on the basis of, there's an implicit word that's missing. And, again, that gets to the use of different terms here. And that is solely by. If because means solely on the basis of, then it can be harmonized. But because and on the basis of mean two different things. And we know that because Congress used the words in sequential statutes. You have a few seconds left. Do you want to save them for rebuttal? I do, Your Honor. Okay. Thank you. Thank you. Good morning, Your Honors. John Lomax, may it please the Court, for the Mayo appellees. Dr. Murray pursued claims under three separate statutes in this case. But the underlying facts were simple. In the operating room, as Dr. Murray himself testified at deposition, he grabbed Dr. Chen, pulled, pushed him into an IV pool and yelled and screamed at him until he left the operating room. Dr. Murray also testified that he knew Mayo Clinic Arizona had a zero tolerance policy and that others had been or a CRNA had been terminated for a violation of that policy. I point to those because there is no genuine issue of material fact about those. And they satisfy the two elements that Mayo needed to prove to establish that it had cause to terminate Dr. Murray under the 43-16 claim under USERO. In that case, by showing that those two elements were met and that there was no genuine issue of material facts, summary judgment by the district court was appropriate on count two. Turning to count one, the parties briefed the Lysak factors of circumstantial evidence. And I want to respond to a question that the court raised about or a comment that opposing counsel raised about whether the judge, Logan in this case, was weighing the evidence before in reaching its conclusion. What I see in the court's order is an earnest effort by a federal district court judge to sift through the record and identify whether there was a genuine issue of material fact. One example might highlight that. In the court's order, he said that Dr. Bright, he found his account. The court said that Dr. Bright's account had been the most compelling. But what the district court understood by reviewing the record was Dr. Murray, in his controverting statement of facts, had admitted those facts about what he told Dr. Murray in paragraphs 18, 19, 57, and 58 of the defendant's statement of facts. Could I turn you to the PTSD issue? So opposing counsel says to the extent that the decision-makers at Mayo terminated him because of concerns about PTSD or PTSD symptoms, that constituted discrimination on the basis of his military service. Yes, Your Honor. I mean, that is the theory they're advancing. I think two courts have looked at this that are cited in our briefs, Arroyo and the Holmes decision, which both said that the Americans with Disabilities Act might be the proper venue to pursue a PTSD claim, but it's not under USERRA. I'd also highlight to the court something in a decision made by the district court that was not appealed in this case. In early briefing in the case on a motion to dismiss, Dr. Murray had pled count three, a claim for the failure of the Mayo defendants to accommodate a service-related disability such as PTSD. We moved to dismiss that count. The court granted it early on in the case, citing the Holmes decision, and that decision was not appealed. So I think it's not only are there no cases going the other way, it's an insufficient basis to argue that the PTSD alone is a sufficient inference to suggest that it must give rise to USERRA claim. Could I ask, this is jumping around a bit, but I had a concern about the district court's failure to give an instruction on subordinate bias on the cat's paw issue. Can you address that issue? What's your response to the argument that there should have been an instruction that, I take it as Dr. Cron's concerns about anger management, should have been imputed to the EOT? Sure. Well, if we look at the standard in the Ninth Circuit for whether a requested jury instruction should be granted under the abuse of discretion standard, he simply didn't establish the facts or the law that he needed to get the standard. And it wasn't necessary. In the final jury instructions, jury instruction number seven, which is available I think at ECF number 302, the court instructed the jury that a corporation is responsible for the acts of its agents. Mayo never argued that Dr. Cron was not an agent of Mayo Clinic Arizona. Mayo never argued that she acted outside the scope of her agency. That instruction was certainly sufficient for them to advance their theory. And if you look at the closing argument made by opposing counsel in this case, all the theories that he advances about Dr. Cron's purported alleged discriminatory motive, the fact that she was involved in every stage, he made those arguments. And he had the instruction that allowed it. So here the instruction was sufficient. There's also a legal issue. He combined the FMLA and the ADA into one instruction Dr. Murray did when he requested that instruction. The FMLA interference claim here is not an intentional discrimination claim. So there's no basis and there's no authority from any court that it is a proper basis. The Lew LIU versus Amway and the Batchelder cases from this court have said that interference claims are non-discrimination claims. They're not tied to any intent of the employer. So there was no need for it on the FMLA. As related, as for the ADA aspect of the case, below at the district court level, Dr. Murray didn't point to any law justifying the application. Moreover, as I pointed out, jury instruction number 7 was sufficient for what was needed to present his case to the jury. But before you go on, I think you're arguing it wasn't necessary for the FMLA,  right? Absolutely. Well, the combining goes to whether it's misleading. And under the en banc decision here, the Peralta case, that's another reason that the jury instruction is not proper. As to the ADA, Your Honor, he didn't cite any law in the district court justifying the application. While there is, obviously that's an intentional discrimination claim, our position is that jury instruction number 7 was sufficient for what he needed to advance his claims. And a review of the closing argument compared to his reply brief in the appellate court shows that he made all the arguments that he wanted to make at closing, and the jury simply did not accept his invitation. This falls under the heading of jumping around as well. But can you talk with me a bit about the evidentiary decisions? It's not clear whether or not the judge made 403 analyses, whether it was the 404B question regarding the Dr. Chen's drug use or the admission of e-mails. Ultimately, were 403 analyses made? So on Dr. Chen, I don't think there was a 403B analysis made by the court. You know, this was first raised by motion in limine, which the court granted. But opposing counsel at trial requested the court to reconsider. In fact, the court did reconsider it, conducting an extensive voir dire of Dr. Trentman with questions from the court as well as counsel for Dr. Murray. And the evidence that came through during that voir dire testimony from Dr. Trentman was that the only evidence that existed was that he had discovered Dr. Chen's drug in November 2015, and he had a mere suspicion. So it doesn't even hit the relevance standard under the federal rules of evidence, because there was no evidence that would link that back to the events in the operating room in 2014. It also fails all four steps under the Lloyd test for 404B evidence for subsequent bad acts. It was remote in time, and it was no personal knowledge even from Dr. Trentman that Dr. Chen or anyone else could testify about as to whether Dr. Chen had been using improperly the anesthetics before November of 2015. Moreover, there was no similarity in events. That's the Dr. Chen question. I think your question also went to the other evidentiary issue, which was the exclusion of the e-mails. So the e-mails had been considered by the court for the USERRA claim. Isn't that right, in the summary judgment? Are these the same group of e-mails? The exact same e-mails. There were six e-mails that were the subject of the motion to eliminate. They were all from 2012 and 2013. The judge in his order did not say he conducted a 403 analysis in his ruling at the joint pretrial. He said that he had reviewed the brief submitted by both sides, looked at the law, and said that the motion should be granted. It's also a fairly straightforward application of the rule of relevance. There's no probative value from e-mails of 2012 and 2013. At that time, there was no issue as it related to the FMLA leave or any issue that Mayo was on notice that Dr. Hickman had. Those issues did not arise until after the operating room incident in February of 2014. So here it's hard to argue probative value of those e-mails, because they simply just didn't relate. And they don't, in fact, refer to an FMLA leave or potential disability diagnosis of any kind. I want to turn to the standard. As noted in our briefing, it's our belief that the Supreme Court decisions in Gross and Nassar effectively overruled the Head decision. Counsel noted that the Ninth Circuit has twice considered Head and referenced Head's holding in subsequent decisions even after Nassar. I want to be clear that no panel of this Court has analyzed or considered whether Nassar and Gross effectively overruled under a Miller v. Gamey analysis the Head decision. In fact, both of those decisions, the Mendoza and the Bercuri decision, highlight that that analysis had not been done. In one case, I believe the Bercuri case, the Court noted, this Court noted, that it was an interesting legal question that need not be answered in this case. The Mendoza decision, a point not noted in the appellant's briefs, had a footnote citing Bercuri and saying we don't need to decide this issue at this point. Is it unfair to characterize our earlier ruling in Head as being one that was largely just encapsulated in one paragraph that said two things, we're following the sister circuits and are prior to precedent? Meaning there was no detailed analysis of the sort that could be useful in really defining whether or not there is an irreconcilable. And I'm sorry, Your Honor, are you referring to the Head, the party's briefing or the Head? The Head decision. Yes, within Head Note 17, I don't know if you have it handy, but in one paragraph it simply says, when describing its ruling for using the motivating factor standard, Hernandez and Sneed, and then the next sentence of importance enough to read now is we therefore hold that ADA outlaws adverse employment decisions motivate it even in part. And it's an analysis for sure, but maybe a lighter one than necessary to make a firm decision on whether or not it's clearly irreconcilable with Gross and Nassar? Well, I don't think there's any doubt that it's clearly irreconcilable. But I think when you look at the Head decision, and I'm familiar with the footnote, it has a laundry list of circuits, many of whom have since reversed their position on this very issue. In light of Gross and Head, the court really what it was doing was doing two things. One, the Head court was deciding whether the solely standard under the Rehabilitation Act should govern the ADA claims, and it rejected that standard. And the Head court was also considering whether we should draw on the Title VII standard of motivating factor, and then they looked to the sister circuits and concluded that they could. Of course, the problem with that under Gross and Nassar is you're importing 703-2M, the motivating factor language of Title VII, and both Gross and Nassar says you cannot, Gross says you can't do it in the ADA. Nassar says you can't even do it within the retaliation section of Title VII. The extension here is under Miller versus GAMI analysis is it's the mode of the analysis and the reasoning of those two cases that govern and that govern what the district court needed to do here. And the district court appropriately reached the right conclusion that Head had been effectively overruled. I see that I'm down to 16 seconds. No, you're over time, so we appreciate it. Thank you for your argument. Thank you, Your Honors. Very briefly, Your Honors, to respond to the last series of questions, the most recent writing on the subject of the ADA standard by the Ninth Circuit is in Phillips versus Victor Community Support Services, which is a 2017 case at 692 Federal Appendix 921, and what it says there So that's unpublished, so it's not precedential, is that correct? I'm not sure, Your Honor. It's Federal Appendix. It's not like a Westlaw site. Federal Appendix is unpublished, but unfortunately, I shouldn't say unpublished, non-precedential, because now everything is published. Well, for whatever non-presidential effect it has, then, Your Honor, what that case says is the ADA outlaws adverse employment decisions motivated, even in part, by animus based on a plaintiff's disability or request for an accommodation of motivating factor standard, citing Head versus Glacier Northwest, Inc., and then it says abrogated on other grounds University of Texas Southwest Medical Center versus Nassar. So that, at least, is an indication that some judges of this Court believe that Head has survived the Supreme Court decisions in Nassar and Gross. And again, the textual analysis, the use of different terminology in the status section of the ADA and the anti-retaliation section of the ADA suggests that there must have been some purposeful intent by Congress in using different terminology. I think we have your argument. We're over time. Thank you. You're well over your time. I'm sorry then, Your Honor. Thank you very much.
judges: Gould, Ikuta, Pearson